# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

### CASE NO.: 1:12-cv-21431-COOKE/TORRES

**UNITED STATES OF AMERICA, et. al.**

       **Plaintiffs**

**vs.**

**FASTTRAIN II CORP. d/b/a FASTTRAIN COLLEGE,**
**and ALEJANDRO AMOR, an Individual,**

       **Defendants.**

_____/

## PLAINTIFF, THE UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS WITH SUPPORTING MEMORANDUM

Plaintiff, the United States of America ("United States" or "Plaintiff"), pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rules 7.1 and 56.1 of the General Rules of the United States District Court for the Southern District of Florida, moves for entry of summary judgment in favor of the United States and against Defendants FASTTRAIN II Corp., d/b/a FastTrain College ("FastTrain") and Alejandro Amor ("Amor") ("FastTrain" and "Amor" are collectively referred to as "Defendants").[1]

## MEMORANDUM OF LAW

### I.   Introduction

This action arises from false statements and claims that Defendants FastTrain and its President, Chief Executive Officer and co-owner, Amor, knowingly presented to, or caused to be presented to, the United States and the United States Department of Education ("ED"),

---

[1] While this Court granted Amor leave to proceed *pro se* as the individual defendant in this action, that Order does not pertain to Defendant FastTrain. *See* Order Granting Amor's Motion for Defendant to proceed *pro se*. E.C.F. 103. The United States' Motion for Default Judgment as to Defendant, FastTrain, has been filed and fully briefed and is pending for the Court's ruling. See E.C.F. Nos.102, 104, 108, 113 and 114.

in violation of the FCA and common law. In this case, the United States seeks to recover treble damages and civil penalties on behalf of the United States under the federal False Claims Act, 31 U.S.C. §§ 3729- 33 ("FCA").

From at least January 2010 through June 22, 2012, when Defendants closed FastTrain, Defendants knowingly presented and/or made, or caused to be presented and/or made, the false claims and statements and concealed material information, in order to participate in the federal student aid programs authorized pursuant to Title IV of the Higher Education Act of 1965 ("HEA"), as amended, 20 U.S.C. §§ 1070 *et seq.* ("Title IV, HEA Programs"). For example, at Amor's direction and participation, FastTrain knowingly submitted and/or caused to be submitted false information relating to the eligibility of students to receive Title IV, HEA program fund, by providing false documentation that certain students had a high school diploma or its recognized equivalent, when such students did not have such credentials. Defendants engaged in fraudulent conduct in an attempt to secure federal aid for students who, but for Defendants' conduct, would have been ineligible for assistance under Title IV of the HEA. FastTrain then improperly drew-down, received and retained Title IV assistance for those unqualified students. FastTrain admissions employees instructed and counseled certain ineligible prospective students to provide false high school completion attestations and further coached certain prospective ineligible students to lie on their Free Application for Federal Student Aid ("FAFSA"), the document required to obtain Title IV, HEA funds. Defendants' conduct was knowing and material to FastTrain's continued eligibility to participate in the Title IV programs. As a result of Defendants' fraudulent scheme and false representations of Title IV eligibility, FastTrain received millions of dollars of Title IV financial aid that it otherwise would not have received but for Defendants' fraudulent conduct.

After a 23-day jury trial in *United States of America v. Alejandro Amor*, Case No.: 1:14-cr-20750-JAL(s)-1 (S.D.Fla.)(hereinafter referred to as "*Amor Criminal Proceeding*"), Amor was convicted of one count conspiracy to steal government funds, in violation of Title 18, United States Code, Section 371, and 12 counts of theft of government funds, in violation of Title 18, United States Code, Section 641 as a result of Amor's and FastTrain's false certifications and false statements of compliance with ED's regulations and policies. Under 31 U.S.C. § 3731(e) of the FCA, Amor and FastTrain are estopped from denying any of the elements of the fraudulent and/or false claims alleged in this civil action.

There is no genuine dispute as to any material fact relating to the Defendants' liability. Plaintiffs' Motion for Summary Judgment against FastTrain and Amor should be granted.

## II.   **ARGUMENT**

### A.   **Standard of Review**

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *United States v. Anghaie*, 633 F. App'x 514, 516 (11th Cir. 2015) (citing Fed.R.Civ.P. 56(a)); *see also Alabama v. North Carolina*, 560 U.S. 330, 344 (2010); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). An issue is "genuine" when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of the non-movant's burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir.2014). A fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). "Where the material

facts are undisputed and all that remains are questions of law, summary judgment may be granted." *Eternal Word Television Network, Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.,* 818 F.3d 1122, 1138 (11th Cir. 2016). *See Saregama India Ltd. v. Mosley,* 635 F.3d 1284, 1290 (11th Cir.2011).

The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anghaie*, 633 F. App'x at 516; *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1253 (11th Cir.2015). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla–Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir.2015).

## B.    The False Claims Act

The False Claims Act ("FCA") provides that:

(1) . . . any person who—
(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]
(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [or]
                                                . . .
is liable to the United States Government for a civil penalty of not less than $5,[5]00 and not more than $1[1],000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104–410 1),[2] plus 3 times the amount of damages which the Government sustains because of the act of that person."

31 U.S.C. § 3729(a)(1)(A)-(B). *See* 28 C.F.R. § 85.3(a)(9).

While Congress did not define what makes a claim "false" or "fraudulent", "[t]he phrase 'false or fraudulent claim' in the False Claims Act should be construed broadly." *United*

---

[2]    Civil penalties in False Claims Act cases were recently increased pursuant to Federal Civil Penalties Inflation Adjustment Improvements Act of 2015 (FCPIAIA), Bipartisan Budget Act of 2015, P.L. 114-74, Nov. 2, 2015, 129 Stat. 584, 599. The increases are inapplicable to this case.

*States ex rel. Sanchez v. Abuabara*, No. 10–61673–CIV-Huck, 2012 WL 254764 at \*6 (S.D.Fla.

Jan. 27, 2012) (quoting, *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 788 (4th

Cir. 1999).) *See* S.Rep. No. 99-345, at 9 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5274).

*See also Universal Health Services, Inc. v. United States and Massachusetts, ex rel. Escobar*, ___ U.S.

___, 136 S. Ct. 1989, 1999 (2016) (hereafter "*Escobar*") (citing *Neder v. United States*, 527 U.S.

1 (1999) (but noting that the FCA's scienter requirement "require[s] no proof of specific intent

to defraud." 31 U.S.C. § 3729(b)(1)(B)). As used in the FCA, a "claim"

> (A) means any request or demand, whether under a contract or otherwise, for
> money or property and whether or not the United States has title to the
> money or property, that—
>> (i) is presented to an officer, employee, or agent of the United States . . .

31 U.S.C. § 3729(b)(2), as amended. The term "knowingly" does not require specific intent

to defraud, only knowledge of the false information or deliberate ignorance or reckless

disregard of its falsity. 31 U.S.C. § 3729(b)(1).

The FCA further provides that:

> Notwithstanding any other provision of law, the Federal Rules of Criminal Procedure, or
> the Federal Rules of Evidence, **a final judgment rendered in favor of the United States in**
> **any criminal proceeding charging fraud or false statements, whether upon a verdict after**
> **trial or upon a plea of guilty or nolo contendere, shall estop the defendant from denying**
> **the essential elements of the offense in any action which involves the same transaction as**
> **in the criminal proceeding and which is brought under subsection (a) or (b) of section**
> **3730**.

31 U.S.C. § 3731(e) (emphasis supplied). **Amor's criminal conviction estops Defendants**

**from disputing liability for each of the FCA counts alleged here and there can be no**

**genuine issues of material fact for the remaining counts**. *Anghaie*, 633 F. App'x at 516.

### C.   Summary Judgment Should Be Entered in Favor of Plaintiffs

The Supreme Court of the United States recently and unanimously held:

> that the implied false certification theory can . . . provide a basis for liability. By punishing
> defendants who submit "false or fraudulent claims," the False Claims Act encompasses
> claims that make fraudulent misrepresentations, which include certain misleading omissions.

**When, as here, a defendant makes representations in submitting a claim but omits its violations of statutory, regulatory, or contractual requirements, those omissions can be a basis for liability if they render the defendant's representations misleading with respect to the . . . services provided**.

. . .

The claims in this case do more than merely demand payment. **They fall squarely within the rule that half-truths—representations that state the truth only so far as it goes, while omitting critical qualifying information—can be actionable misrepresentations**.

. . .

Accordingly, <u>we hold that the implied certification theory can be a basis for liability, at least where two conditions are satisfied: first, the claim does not merely request payment, but also makes specific representations about the . . . services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths</u>.

*Escobar*, 136 S. Ct. at 1999, 2000 -02 (emphasis added).

### 1.   <u>Preclusive Effect of Amor's Conviction</u>

The same conduct and transactions underlying Amor's conviction for stealing government money, namely Pell Grants and Direct Loans, in violation of 18 U.S.C. § 371, and 12 substantive counts of theft of government money, in violation of 18 U.S.C. § 641[3] form the basis of the United States' FCA claims against Defendants. The preclusive effect of a criminal conviction on future civil proceedings is well established. *See, e.g., Allen v. McCurry*, 449 U.S. 90, 104 n. 22 (1980); *Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 568–69 (1951). Indeed, a criminal conviction, whether by jury verdict or guilty plea, constitutes estoppel in favor of the United States in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case. *See, e.g., Lloyd v. Card*, 283 F. App'x 696, 701 (11th Cir. 2008).

For claims arising under the FCA, the analogous principle of collateral estoppel is codified in the FCA at 31 U.S.C. § 3731(e). The law is exceedingly clear that a criminal conviction for a violation of 18 U.S.C. §§ 371 and/or 641 estops a defendant in a FCA case

---

[3]   *Amor Criminal Proceeding*, Verdict of Jury, D.E. 393 and Judgment and Conviction, D.E. 489.

from denying the essential elements of the §§ 3729(a)(1)(A) and (B) offenses, when these claims involve the same transaction at issue in the defendant's prior criminal proceeding, at which the defendant is found guilty. *United States v. Anghaie*, 633 F.App'x. 514, 516 (11th Cir. 2015); *United States v. Aleff*, 772 F.3d 508, 510 (8th Cir. 2014) (defendants who pled guilty to conspiracy to defraud the United States by submitting false applications for loan-deficiency payments, estopped Defendants from denying the essential elements of FCA offenses); *United States ex rel. Nottingham v. Thomas,* No. 4:11cv99, 2015 WL 7424738 (E.D. Va. Oct. 26, 2015); *United States ex rel. Green v. Schuykill Products, Inc.*, Civil No. 1:10–cv–0040, 2014 WL 2154664 (M.D. Pa. May 22, 2014) (holding defendant's guilty plea for 18 U.S.C. § 371 violation conclusively established all of the factual issues as to his liability under the FCA); *United States v. Karron*, 750 F.Supp.2d 480, 487 (S.D.N.Y.2011) (defendant in a FCA suit was precluded from denying liability for false statements when he was previously convicted in the criminal proceeding for the "same transaction."); *United States v. Mastellone*, No. 10 Civ. 7374(DLC), 2011 WL 4031199, (S.D.N.Y. Sept. 12, 2011)(defendant who pled guilty to a felony charge of fraudulently stealing money from the United States, in violation of 18 U.S.C. § 641, "estopped from denying the essential elements of the §§ 3729(a)(1)(A) and (B) offenses, since these claims involve the same transaction at issue in [defendant]'s prior criminal proceeding, at which he pled guilty."); *United States v. Sriram*, No. 00 Civ. 4988, 2008 WL 516306, at *4–5 (N.D. Ill. Feb. 26, 2008) (statutory estoppel proper where the civil action involved the "same course of conduct" and overlapping "specific factual matters" as the prior criminal case); *United States v. Eghbal*, 475 F.Supp.2d 1008, 1013–16 (C.D.Ca. 2007) (no genuine issue of material fact regarding liability under the FCA because defendants' prior convictions and admissions in plea agreements established that their false statements caused the Government "to pay out money"); *United States v. Irizarry–Colon*, No. 05 Civ. 1607(JAF), 2006 U.S. Dist.

LEXIS 38850, at *40–41 (D.P.R. June 9, 2006) (statutory estoppel proper where the "civil complaint is based on same allegations that were the basis for [the defendants'] convictions").

### 2. The Final Judgment Finding Amor Guilty in the *Amor Criminal Proceeding* Included Charges of Amor's "Fraud or False Statements" Within the Meaning of Section 3731(e) of Title 31

Central to the FCA estoppel analysis is an examination of what the jury found in the criminal case and what a fact-finder must determine in this civil action. *Anghaie, supra*. Both this action and *Amor Criminal Proceeding*, arise from the same transaction, and all Parties have previously stipulated to this fact. *See e.g.* Joint Motion to Stay Civil Proceedings Pending Final Resolution of Related Criminal Case, E.C.F. 84 at 6.

Under Title IV of the HEA, 20 U.S.C. §§ 1070 et seq., Congress established various student loan and grant programs, including but not limited to, the Federal Pell Grant Program ("Pell", "Pell Grant" or "Pell Grants"), the Federal Family Education Loan ("FFEL") Program, the Federal Direct Loan ("FDL") Program and the Campus Based Programs in order to financially assist eligible students in obtaining a post-secondary education (collectively the "Title IV, HEA Programs"). Amor signed and submitted four Program Participation Agreements ("PPAs") to ED on behalf of all of FastTrain's campuses throughout Florida between 2012 and 2012. Affidavit of Jason Williams. *See also Amor Criminal Proceeding*, October 26, 2015 Trial Transcript, Testimony of David Bartnicki at pp. 17-20 ("Bartnicki Testimony"). By signing the PPAs, Amor, on FastTrain's behalf, certified that FastTrain would comply with all applicable Title IV, HEA requirements. *Id. See also* 20 U.S.C. § 1094; 34 C.F.R. § 668.14. Only "eligible" students are permitted to receive federal financial aid under Title IV of the HEA. *Id.* 34 C.F.R. § 668.32. Among other things, a student must have a high school diploma or its recognized equivalent, unless an enumerated exception applies. *Id*. 34 C.F.R. §§ 668.32, 668.34.

Prior to the jury deliberations and Amor being found Guilty, the Jury in the *Amor Criminal Proceeding* was provided with a copy of the Second Superseding Indictment in which Amor was charged. See *Amor Criminal Proceeding*, Court's Instructions to Jury, D.E. No. 395 at p. 10.

The Second Superseding Indictment against Amor and his co-conspirators, alleges (and we allege in the instant case) and the Government established at trial, among other things, that FastTrain was approved by ED to receive both Pell Grants and Direct Loans. Amor signed a "Program Participation Agreement," in which he agreed that FastTrain would comply with all applicable federal statutes and regulations relating to the Pell Grant and Direct Loan Programs, including, among other things, the requirement that FastTrain enroll only students with a high school diploma, GED, or other credential approved by the Secretary of Education. Both the Second Superseding Indictment (and the Second Amended Complaint here) set forth allegations regarding the Federal Student Aid Programs authorized by Title IV of the HEA. *See Amor Criminal Proceeding*, Second Superseding Indictment, D.E. 252 at ¶¶ 15-30 and Second Amended Complaint, E.C.F. 83 at ¶¶37-68.

Amor was charged in the *Amor Criminal Proceeding* with fraud or false statements. The Second Superseding Indictment alleges:

### **PURPOSE OF CONSPIRACY**

3. It was the purpose of the [Defendants'] conspiracy to unlawfully enrich themselves by obtaining and misappropriating Pell Grant and Direct Loan funds from the United States Department of Education **by making materially false and fraudulent representations**, **and by the concealment of material facts**, **concerning, among other things, the eligibility of students to receive Pell Grant and Direct Loan funds and the students' status as high school graduates**.

### **MANNER AND MEANS OF THE CONSPIRACY**

The manner and means by which the defendants and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things, the following:

4. Beginning in or around January 2010, **ALEJANDRO AMOR directed** JOSE W. GONZALEZ, ANTHONY MINCEY, Michael Grubbs, Luis Arroyo, Juan Arreola, Juan Peña, and others, **to enroll students without high school diplomas or GEDS in FastTrain. AMOR further directed** [them], and others, **to coach those students to lie to FastTrain financial aid representatives assisting students with their FAFSAS, in order to falsely and fraudulently obtain Pell Grant and Direct Loan funds** for the students.

5. JOSE W. GONZALEZ, ANTHONY MINCEY, Michael Grubbs, Luis Arroyo, Juan Arreola, Juan Peña, and others, acting at **the direction of ALEJANDRO AMOR, recruited students without high school diplomas to enroll in FastTrain by, among other things, falsely and fraudulently advising the students that they could obtain a high school diploma for a fee and should falsely and fraudulently respond yes when asked by FastTrain financial aid representatives whether they had a high school diploma or GED**.

6. **ALEJANDRO AMOR**, JOSE W. GONZALEZ, ANTHONY MINCEY, Michael Grubbs, Luis Arroyo, Juan Arreola, Juan Peña, and others, **caused the students without high school diplomas to submit FAFSAS to the United States Department of Education falsely and fraudulently indicating that the student had graduated from high school or had a GED**.

7. **As a result of these false and fraudulent FAFSAS, ALEJANDRO AMOR received Pell Grants and Direct Loans from the United States Department of Education**.

8. **ALEJANDRO AMOR used the proceeds from the false and fraudulent FAFSAS** for his own benefit and the benefit of others, **and to further the** fraud.

See *Amor Criminal Proceeding*, Second Superseding Indictment, D.E. 252 at Purpose of Conspiracy ¶3; Manner and Means of the Conspiracy ¶¶4, 5, 6, 7 and 8 (emphasis added). *See also* Second Superseding Indictment, D.E.252 Overt Acts ¶¶ 1-40 for examples of FastTrain's fraud and fraudulent conduct for which Amor was charged and convicted.

On December 8, 2015, Defendant Alejandro Amor's Motion for New Trial was filed in the *Amor Criminal Proceeding*, Case No.: 1:14-cr-20750-JAL(s)-1 (S.D.Fla.), D.E. 410. On May 6, 2016, Judge Lenard entered an "Order Denying Defendant Amor's Motion for New Trial (D.E. 410)." *Id.* at D.E. 513. In that 20-page Order, Judge Lenard explained:

**I. Background**

**This case arose from** an investigation by the United States Department of Education, Office of Instpector [sic] General, regarding **illegal student recruiting and enrollment practices at Fast Train, a for-profit college with seven campuses throughout Florida**. Testimony at trial revealed that Fast Train admissions representatives—acting at the direction of the school's owner, Defendant Alejandro Amor ("Defendant")—routinely recruited and enrolled students at Fast Train who were not eligible for federal student aid because they did not have a high school diploma or GED. **In order to obtain federal student aid on behalf of the ineligible students they recruited**, Fast Train admissions representatives . . . coached the students to falsely claim that they did have the required credential—first on their Fast

Train enrollment paperwork, then in interviews with Fast Train's financial aid officers, and finally on their applications for federal student aid ("FAFSAs"). <u>As part of their efforts to induce ineligible students to enroll in Fast Train, admissions representatives falsely promised students they would earn a high school diploma while attending Fast Train and, in some cases, representatives actually sold students fictitious high school diplomas.</u>

On September 30, 2014, Defendant Amor, along with admissions representatives Michael Grubbs, Jose W. Gonzalez, and Mincey, was indicted by a federal grand jury and charged with conspiracy to steal government money, namely Pell Grants and Direct Loans, in violation of 18 U.S.C. § 371, and fourteen substantive counts of theft of government money, in violation of 18 U.S.C. § 641. (D.E. 1.) . . . A Second Superseding Indictment, also alleging the same statutory violations (but removing two substantive counts), was returned September 29, 2015.1 (D.E. 252.) Defendants Amor and Mincey proceeded to trial, which began October 21, 2015. (See D.E. 344.)

. . .

Trial lasted twenty-three days. (See D.E. 391.) **The Government presented approximately forty witnesses, including several former Fast Train students who testified that they were recruited, coached to lie on their FAFSAs about their eligibility for student aid, and saddled with thousands of dollars in debt that they are unable to repay. Most of the student witnesses testified that they dropped out of Fast Train for personal reasons or because they were not satisfied with the school. Six Jacksonville students identified Mincey as the (or one of the) admissions representatives who falsely advised them that a high school diploma or GED was not required for admission to Fast Train.**

**The Government also presented the testimony of several former Fast Train employees who were either directed by Defendant to enroll ineligible students or fired for refusing to do so. For example, former admissions director Luis Arroyo testified that he and his staff began creating fake high school diplomas for ineligible students and that he got the idea from Defendant, who had ordered education director Santiago Martinez to create a diploma for a student. Additionally, former financial aid representative Caridad Perez testified that Defendant routinely pressured her to process ineligible students for federal student aid, and ultimately fired her for refusing to do so. Moreover, former admissions representative Jose W. Gonzalez testified that, with Defendant's blessing, he obtained invalid high school diplomas for recruits from a high school called American Worldwide Academy, by taking the test for students and collecting a fee; in some cases, Mr. Gonzalez enrolled the students without actually collecting the fee or providing the diploma at all. Finally, the Government presented several emails and other documents, as well as an audio recording, which, together with the testimony, established that Defendant was repeatedly advised about the illegal activities at Fast Train, and took active steps to conceal those activities, including creating false reports of internal investigations, fake "secret shopper" programs, and fake employee disciplinary reports.**

At the close of the Government's case, the Court denied Defendant's Rule 29 Motion for judgment of acquittal. (D.E. 365.) . . .

Defendant presented several witnesses in his defense. . . . Fifth, former Fast Train operations manager German Vargas testified that Defendant never asked him to do anything illegal and, in fact, that Defendant had directed him to conduct an investigation into allegations of misconduct raised by former Fast Train employee (and Government witness) Joseph Bodden. . . .

The Government called eight rebuttal witnesses to establish that Amor had falsified the results of the Bodden investigation, about which German Vargas had testified. **<u>Specifically, the rebuttal witnesses demonstrated that, even when presented with notes of the</u>**

**investigation, which included names of Fast Train enrollees without high school diplomas, Defendant had not only retained federal student aid in those enrollees' names, but had also prepared a lengthy type-written report falsely claiming that the Bodden investigation had revealed no improprieties in any area, including students without diplomas.**

Defendant was convicted of all thirteen counts charged in the Second Superseding Indictment. (See Jury Verdict, D.E. 393.) . . . [2] On December 8, 2016, Defendant filed the instant Motion for New Trial. (D.E. 410.)

[2] On May 2, 2016, the Court entered Judgment, sentencing Defendant to, inter alia, sixty months' imprisonment as to Count 1 and ninety-seven months' imprisonment as to Counts 2-13, all to run concurrently. (D.E. 489.)

*Id.*, Order Denying Defendant Amor's Motion for New Trial, D.E. 513 at 1-6.

Amor was convicted following a jury trial of conspiracy to steal government money, namely for making materially false statements to draw down Pell Grants and Direct Loans, in violation of 18 U.S.C. § 371, and 12 substantive counts of theft of government money, in violation of 18 U.S.C. § 641. *Id.* Judge Lenard, the trial judge, instructed the jury that these charges required proof beyond a reasonable doubt and that the Government was required to "prove intent to defraud or deprive beyond a reasonable doubt." *Amor Criminal Proceeding*, Court's Instructions to Jury, D.E. No. 395 at pp. 2 – 3, 17. Amor's conspiracy conviction required proof beyond a reasonable doubt that he agreed to accomplish an unlawful plan; that he knew the unlawful purpose of the plan and joined willfully; that he engaged in at least one of the charged overt acts; and that he knowingly committed that act with the purpose of accomplishing some object of the conspiracy. *Amor Criminal Proceeding*, Court's Instructions to Jury, D.E. No. 395 at pp. 11 – 12, 16. And the purpose of the conspiracy in which Amor took part was to unlawfully enrich himself "by obtaining and misappropriating Pell Grant and Direct Loan funds from ED by making materially false and fraudulent representations, and by the concealment of material facts, concerning, among other things, the eligibility of students to receive Pell Grant and Direct Loan funds and the students' status as high school graduates." *Id.* at D.E. 252 at Purpose of Conspiracy ¶3. Moreover, as a result of the false and

fraudulent FAFSAs that Amor caused to be submitted to ED, Amor was able to, and caused FastTrain to, drawdown Pell Grants funds and Direct Loans funds from ED. Amor used the proceeds from the false and fraudulent FAFSAs for his own benefit and the benefit of others, and to further the fraud. *Id.*, D.E. 252 at <u>Purpose of Conspiracy</u> ¶3; <u>Manner and Means of the Conspiracy</u> ¶¶4, 5, 6, 7 and 8, <u>Overt Acts</u> ¶¶ 1-40 and Final Paragraph.

Although he has now filed an appeal, based on his conviction, Amor is estopped from denying either that he conspired to defraud the government or that he knowingly made false claims. *United States v. Szilvagyi*, 398 F. Supp. 2d 842 (E.D. Mich.2005) (defendant's prior criminal conviction given full preclusive effect under the FCA, even though defendant's conviction was on appeal with the Court of Appeals). *See also Anghaie*, 633 F. App'x at 516.

Moreover, applying the criteria for collateral estoppel under federal common law,[4] Amor's prior conviction also has preclusive effect in the present case. First, the criminal and civil cases both presented the same issue—Amor's fraudulent claims to ED. Second, the falsity of Amor's statements and claims were central to the criminal charges, and third, the criminal case ended in the jury returning a verdict of guilt on the 13 counts for which Amor was charged after he had a full and fair trial. As a matter of law, the final judgment rendered in favor of the United States and against Amor in the Criminal Proceedings charging fraud or false statements, upon a verdict after trial, estops Amor from denying the essential elements of the offense in this action which involves the same transaction as in the criminal proceeding

---

[4]   Under federal common law, collateral estoppel applies where "(1) the issue must be identical in the pending case to that decided in the earlier proceeding; (2) the issue must necessarily have been decided in the earlier proceeding; (3) the party to be estopped must have been a party or have been adequately represented by a party in the earlier proceeding; and (4) the issue must actually have been litigated in the first proceeding." *Montalbano v. C.I.R.*, 307 F.App'x. 322 (11th Cir. 2009) (*citing In re Raiford*, 695 F.2d 521, 523 (11th Cir. 1983)). For purposes of collateral estoppel, a judgment based on a guilty plea and a judgment based on a trial on the merits have the same preclusive effect. *Montalbano v. C.I.R.*, 307 F.App'x. at 322.

and which has been brought under 31 U.S.C. §3730 (a) and (b). The effect of this preclusion is that Amor cannot deny liability under 31 U.S.C. § 3729(a)(1)(A) and (B).

As CEO and President of FastTrain, Amor's conviction also binds FastTrain. As Amor is estopped from contesting the FCA cause of action against him and FastTrain, there are no genuine issues of material fact upon which Amor might craft a defense and therefore, Summary Judgment must be entered against both Amor and FastTrain.

### D. Defendants' False Claims Were Material to ED's Payments to FastTrain

In cases where the requirements of the PPA are not met, ED has the authority to take various actions, in its discretion, against a school. For example, ED may institute emergency action to withhold Title IV funding from an institution that "is violating *any* statutory provision of or applicable to Title IV of the HEA [or] *any* regulatory provision prescribed under that statutory authority . . . ." 34 C.F.R. 668.83. ED may also impose civil penalties, 20 U.S.C. § 1094(c)(1)(F), and/or limit, suspend, or terminate an institution from participation in the HEA programs for violating *any* statutory or regulatory provision of or applicable to Title IV of the HEA. 34 C.F.R. § 668.86(a). Because ED has the authority to withhold funds for any violation of its eligibility regulations, *any* such violation is material as a matter of law, because the violation would be capable of influencing the agency's decision. *See Escobar, supra,* at 2003-04 ("when evaluating materiality under the False Claims Act, the Government's decision to expressly identify a provision as a condition of payment is relevant . . . Likewise, proof of materiality can include, but is not necessarily limited to, evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement.") Here, as a matter of law, any violation of the eligibility provision entitled ED to withhold Title IV funding, and was therefore information that ED would want to consider

in deciding whether to make payment, and thus satisfies the requirement of materiality.

The *Amor Criminal Proceeding* record further shows that Defendants' false statements were illegal and material to the United States deciding to pay false claims. *See* Bartnicki Testimony, supra, at pp.6-50 and 103-107. ED would never have permitted FastTrain to draw-down funds had it known of Defendants' false statements, fraud and unlawful conduct. *Id*. The jury heard much evidence tying Amor's false statements and certifications to ED's decisions to permit FastTrain to draw down millions of dollars. For example, David Bartnicki, a Federal Training Officer with the Office of Federal Student Aid, testified at trial during the *Amor Criminal Proceeding*, ED's eligibility requirements are based upon statute, and implementing regulations, that reflect the ED's assessment that federal student aid should be available, in most instances, only to those students who have completed high school or earned a GED, because those are the students most likely to benefit from—and succeed in—most post-secondary schools. As a matter of law, ED does not disburse federal student aid on behalf of students who are unready, or unlikely to succeed, at a post-secondary institution, because they were unable to complete high school or earn a GED. Bartnicki Testimony, *supra*, at pp.25-26 and generally 27-50, 104-108. As the Ninth Circuit recognized, the assurances, statements and certifications in the PPA are "'the *sine qua non*' of federal funding, for one basic reason: if the University had not agreed to comply with them, it would not have gotten paid." *United States ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166, 1176 (9th Cir. 2006).

## III.    False Claims Act Damages and Civil Penalties Analysis

### A.    Treble Damages

When found to have violated the FCA, a defendant "is liable to the United States Government for . . . 3 times the amount of damages which the Government sustains because of the act of that person," plus civil penalties. 31 U.S.C. § 3729(a).

A "claim" is "some sort of request for the government to pay out money or forfeit moneys due." *Hendow*, 461 F.3d at 1174. Each time Defendants, or a student at one of Defendants' campuses, requested that federal financial aid under one of the Title IV programs described above be paid to FastTrain for a student's costs of attendance, there was a claim upon the government fisc. *See id.*

In this case, Defendants are liable, at a minimum, for damages of three times the amount of federal student aid Defendants stole through their false claims and false certifications to ED on behalf of ineligible students less any amount that Amor will pay to the Government in restitution. As the Eleventh Circuit recently explained "[i]n a damages action the sole question is whether the defendant wrongfully caused the loss." *Anghaie*, 633 F. App'x at 518 ("Damages measure the amount of compensable loss a victim has suffered." *Id.* (quoting, *United States v. Barnette*, 10 F.3d 1553, 1556 (11th Cir. 1994)). While there is "no set formula for determining the government's actual damages" for an FCA claim, the Eleventh Circuit further explained that, as a general rule, the "measure is 'the difference between what the government actually paid on the fraudulent claim and what it would have paid had'" it known of the false statements. *Id.* (quoting, *United States v. Killough*, 848 F.2d 1523, 1532 (11th Cir. 1988)). Moreover, a defendant can "also be liable for intangible harm." *Id.*

The purpose of federal loans and grants is to benefit Title IV eligible students. Defendants' liability for all the money it received from the government is a straightforward application of the measure of the government's damages ordinarily employed in FCA cases, which is the amount that the government paid out by reason of the false statements over and above what it would have paid the Defendants if the claims had been truthful. In computing actual damages, the Supreme Court has held that "[t]he Government's actual damages are equal to the difference between the market value of the [items] it received and retained and

the market value that the [items] would have had if they had been of the specified quality." *United States v. Bornstein*, 423 U.S. 303, 317 n. 13 (1976). However, the law recognizes a fundamental distinction between a case where the United States receives a substitute item of lesser value, and cases like this one where the Defendants fraudulently claim eligibility for programs designed to benefit third-parties rather than the government itself. Where, as here, the violation in question rendered the Defendants ineligible to supply the relevant service in the first place, the amount that the United States would pay is zero and the proper measure of damages is the full amount paid out by the United States. *Anghaie*, 633 F. App'x at 518 (citing, *United States ex rel. Longhi v. United States*, 575 F.3d 458, 461–62, 473 (5th Cir. 2009) (affirming award of damages based on full amount of Government grant without offset); *United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1279 (D.C.Cir. 2010) ("where the defendant fraudulently sought payments for participating in programs designed to benefit third-parties rather than the government itself, the government can easily establish that it received nothing of value from the defendant and that all payments made are therefore recoverable as damages."); *United States v. Rogan*, 517 F.3d 449, 453 (7th Cir. 2008) (affirming award of damages based on total amount that defendant received from Government without offset); *United States v. Mackby*, 339 F.3d 1013, 1018–19 (9th Cir. 2003) (rejecting damages offset where the Government had received no asset of ascertainable value), *cert. denied*, 541 U.S. 936, 124 S.Ct. 1657, 158 L.Ed.2d 356 (2004); *United States v. TDC Mgmt. Corp.*, Inc., 288 F.3d 421, 427–28 (D.C.Cir.2002) (same). Accordingly, the United States could properly request this Court to calculate damages based on the entire amount of approximately $25,200,00.00 that FastTrain received during the 2010-2012 program years. *Anghaie*, 633 F. App'x at 518. *See Amor Criminal Proceeding*, October 18, 2015 Trial Transcript, Testimony of

Nicole Eisenzopf, at pp. 25-27 and November 10, 2016 Trial Transcript, Testimony of Mary Wilson ("Wilson Testimony") at pp. 5-11, concurrently filed herewith.

However, within our prosecutorial discretion, consistent with the United States' position at sentencing and restitution hearings, we request the measure of damages here be based upon the approximate amount of federal student aid Defendants stole through their false claims and false certifications to ED on behalf of ineligible students which is $4,129,765.00,. *Amor Criminal Proceeding*, May 2, 2016 Sentencing Hearing Transcript, at p. 34, and April 18, 2016 and June 6, 2016 transcripts concurrently filed herewith. *See also Id.* at United States' Status Report Regarding Loss Amount, D.E. 483; United States' Response to Defendant Alejandro Amor's Motion for Stay of Restitution Judgment, D.E. 530; Declaration of Jason Williams. The amount of unrepaid federal student aid stolen by the Defendants on behalf of ineligible students represents an actual loss to ED and the United States, because those funds were not legally available, under any circumstances, to those students. *Anghaie*, 633 F. App'x at 518.[5]

Accordingly, the United States submits that the proper measure of <u>single damages</u> in the instant case is $4,129,765.00, the amount of federal student aid Defendants stole through their false claims and false certifications to ED on behalf of ineligible students.[6] *Anghaie*, 633

---

[5]    While as the Eleventh Circuit has explained there is a significant distinction between restitution and FCA damages (*Anghaie*, 633 F. App'x at 518), we do inform this Court that after presentation of evidence and a lengthy sentencing hearing and for purposes of Section 2B1.1(b)(1) of the United States Sentencing Guidelines, Judge Lenard found Amor owes restitution of $1,900,000. *Amor Criminal Proceeding*, Minute Entry, D.E.524 and also D.E. 530 at pp.1-2. The Government respectfully disagreed with the Court's decision in this regard. See U.S.S.G. 2B1.1, Application Note 3(F)(ii) ("In a case involving government benefits (e.g., grants, loans, entitlement program payments), loss shall be considered to be not less than the value of the benefits obtained by unintended recipients or diverted to unintended uses, as the case may be."). *Id.* at D.E. 530 at p. 2, fn.1.

[6]    Alternatively, this Court could follow Judge Lenard's determination in the *Amor Criminal Proceeding* that conclude single damages in the instant case also equate to $1,900,000.00.  However, for the reasons discussed above, we submit single damages should be no less than $4,129,765.00.

F. App'x at 518. Declaration of Jason Williams. The single damages amount must be trebled and deducted from that is any amount Amor will pay to the Government in restitution. *United States v. Karron*, 750 F.Supp.2d 480, 493 (S.D.N.Y. 2011).[7]

**B.     Civil Penalties**

Liability under the FCA also triggers the imposition of civil penalties. 31 U.S.C. § 3729(a) (a person liable under the FCA "is liable to the United States Government for a civil penalty of not less than $[5,500] and not more than $[11,000]"); 28 C.F.R. § 85.3(a)(9) (adjusting penalties for inflation). Defendants signed, certified and submitted four PPAs to ED on behalf of all of FastTrain's campuses throughout Florida during the 2010-2012 timeframe. Declaration of Jason Williams; Bartnicki Testimony at pp. 17-20. Those PPAs constituted false claims. Additionally, during the 2010-2012 program years, there were 920 separate draw-downs associated with FastTrain in the ED's Grants Management System (G-5). Each draw-down falsely certified FastTrain's compliance with ED regulations.[8]

Defendants are liable for penalties for each false or fraudulent claim submitted which will include each PPA in which Defendants promised compliance with the HEA and the student eligibility requirement, each request (or joint request with students) for the specific Title IV funds identified above and each draw-down of Title IV funds accompanied by a certification of compliance with the HEA, implicit or explicit. Defendants falsely certified FastTrain's compliance with ED regulations during that period, and such false certifications were material and each draw-down constitutes a false claim. *Anghaie*, 633 F. App'x at 520.

---

[7]   The imposition of a FCA treble damages and civil penalties liability upon the Defendants does not violate the Double Jeopardy Clause of the Fifth Amendment nor the Excessive Fines Clause of the Eighth Amendment. *See Anghaie*, 633 Fed.Appx. at 519; *Aleff*, 772 F.3d at 511-13; *Karron*, 750 F.Supp.2d at 493 n.12 (and cases collected therein).

[8]   The 920 draw-downs occurred on 193 days between January 1, 2010 and May 2012 and were made for the grant and loan programs since program year 2010. Declaration of Nicole C. Eisenzopf.

Given the egregious nature of Defendants' conduct, the United States submits that an $11,000 penalty for each of the false claims should be imposed against Defendants. Thus, penalties can be assessed between $5,500 and $11,000.00 for each of the 920 separate draw-downs and four PPAs.

## IV.   <u>CONCLUSION</u>

For the reasons stated above, the United States is entitled to judgment as a matter of law in its favor and against Alejandro Amor and FastTrain on Counts I and II, in the amount of $4,129,765.00, trebled ($12,389,295.00), less the $1,900,000.00 restitution amount that Judge Lenard has ruled in the *Amor Criminal Proceeding* that Amor will be required to pay and civil penalties in the amount of $10,197,000.00 for the 924 draw-downs and four PPAs resulting in the false claims Defendants submitted to ED.[9]

**Respectfully Submitted,**

**WIFREDO A. FERRER**
**UNITED STATES ATTORNEY**

By: **s/James A. Weinkle**
      **James A. Weinkle**
      **Assistant United States Attorney**
      Florida Bar No. 0710891
      99 N.E. 4th Street, Suite 300
      Miami, Florida 33132
      Tel.: 305.961.9290/Fax: 305.530.7139
      Email: James.Weinkle@usdoj.gov

**Counsel for United States of America**

---

[9]   Alternatively, if this Court follows Judge Lenard's loss amount calculated for restitution, the Court could award single damages in the amount of $1,900,000.00, trebled ($5,700,000.00), less the restitution amount, and additionally hold Defendants liable for civil penalties between $5,500 and less than $11,000 per false claim. Given the significant number of false claims in this case, the Court has discretion to find 924 false claims and impose a penalty of $5,500 for each false claim for total civil penalties of $5,082,000.00. While it is statutorily proper to impose a civil penalty for each of the 924 false claims, given the specific facts of this case and the amount of damages at issue, the Court conceivably could use its discretion and impose a penalty of between $5,500 and $11,000 for 197 false claims by adding the four PPAs constituting false claims and grouping the drawdowns into 193 (the number of days FastTrain's 920 false claim drawn-downs were made).

## SERVICE LIST

*U.S. v. FastTrain and Amor,*
**CASE NO.: 1:12-cv-21431-COOKE/TORRES**
**United States District Court Southern District of Florida**

      I hereby certify that on August 22, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

| | |
|---|---|
| **Mark S. Hamilton**<br>**Special Counsel**<br>**Consumer Protection Division**<br>Florida Bar No.: 63819<br>Office of the Attorney General<br>The Capitol, PL-01<br>Tallahassee, Florida 32399-1050<br><br>Tel.:: (850) 414-3300/Fax: 850-488-4483<br><br>Email: Mark.Hamilton@myfloridalegal.com<br><br>**Counsel for State of Florida**<br><br>**Via CM/ECF** | **Alejandro Amor**<br>Register Number: 06859-104<br>Federal Detention Center-Miami<br>33 NE 4th Street<br>Miami, FL  33132<br><br>Via U.S. Mail |

                                  **/s James A. Weinkle**
                                  **James A. Weinkle**