# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### Case No. 12-Civ-21431-COOKE/TORRES

UNITED STATES OF AMERICA, *et al.*,

    Plaintiffs,

vs.

FASTTRAIN II CORP.,
d/b/a FASTTRAIN COLLEGE,
an administratively dissolved for profit
Florida corporation and ALEJANDRO
AMOR, an individual,

    Defendants.

_____/

### OMNIBUS ORDER ON MOTIONS FOR SUMMARY JUDGMENT

    This is an action under the federal False Claims Act, 31 U.S.C. §§ 3729-3733 ("FCA"). Plaintiff, the United States of America, alleges Defendants FastTrain II Corp., d/b/a FastTrain College ("FastTrain") and its President, Chief Executive Officer and co-owner, Alejandro Amor,[1] knowingly presented, or caused to be presented, false statements and claims to the United States and the United States Department of Education ("DOE"). Plaintiff seeks treble damages and civil penalties.

    I have jurisdiction under 28 U.S.C. § 1331 and 31 U.S.C. § 3732(a).

    Pending are: (1) the United States' Motion for Summary Judgment (ECF No. 131); and (2) Amor's Cross-Motion for Summary Judgment (ECF No. 141).[2] For the reasons that follow, I grant Plaintiff's Motion and deny Defendant's Motion.

---

[1] On October 26, 2016, I granted Amor's leave to proceed *pro se* in this action. (ECF No. 103). With respect to FastTrain, however, I granted Plaintiff's Motion for Default Judgment (ECF No. 173) because after FastTrain's counsel withdrew, it failed timely to obtain new counsel. *See Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1386 (11th Cir. 1985).

[2] Amor's September 22, 2016 Cross-Motion for Summary Judgment was untimely, as dispositive motions were due by August 26, 2016. Nonetheless, in the interest of bringing this tortuous litigation to a long-overdue final resolution, I address Amor's arguments herein.

## I. BACKGROUND

This action arises from violations of the FCA and common law by FastTrain and its President, Chief Executive Officer, and co-owner Amor. From at least January 2010 through June 2012, when FastTrain closed, FastTrain and Amor knowingly presented, or caused to be presented, false claims and statements to the DOE and concealed material information in order to participate in the federal student aid programs authorized under Title IV of the Higher Education Act of 1965 ("HEA"), as amended, 20 U.S.C. §§ 1070 *et seq.* ("Title IV, HEA Programs").

At Amor's direction, FastTrain knowingly submitted and/or caused to be submitted false information relating to the eligibility of students to receive Title IV, HEA Programs funds – through the Federal Pell Grant Program (Pell Grant"), the Federal Family Educational Loan Program ("FFEL"), the Federal Direct Loan Program ("FDL") and the Campus Based Programs – by providing false documentation that certain students had a high school diploma or its recognized equivalent when in fact they did not have such credentials. Also at Amor's direction, FastTrain admissions employees instructed and counseled ineligible prospective students to provide false high school completion attestations and further coached them to lie on their Free Application for Federal Student Aid ("FAFSA"), the document that students file to obtain Title IV, HEA funds. As a result of Amor's fraudulent scheme and false representations of Title IV eligibility, FastTrain received millions of dollars of Title IV financial aid that it otherwise would not have received.

After a twenty-three day trial in *United States of America v. Alejandro Amor*, Case No. 1:14-cr-20750-JAL(s)-1 (S.D. Fla.) ("*Amor Criminal Proceeding*"), a jury convicted Amor of one count of conspiracy to steal Government funds, in violation of Title 18, United States Code, Section 371, and twelve counts of theft of Government funds, in violation of Title 18, United States Code, Section 641.[3] The United States now seeks to recover treble damages and civil penalties under the FCA for Amor's illegal acts.

## II. STANDARD OF REVIEW

Summary judgment "shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

---

[3] *Amor Criminal Proceeding*, ECF Nos. 393, 489.

2

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642 (11th Cir. 1997) (quoting Fed. R. Civ. P. 56(c)) (internal quotations omitted); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). Thus, the entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id*.

Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted).

"A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Damon*, 196 F.3d at 1358. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Abbes v. Embraer Servs., Inc.*, 195 F. App'x 898, 899-900 (11th Cir. 2006) (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)).

When deciding whether summary judgment is appropriate, "the evidence, and all inferences drawn from the facts, must be viewed in the light most favorable to the non-moving party." *Bush v. Houston County Commission*, 414 F. App'x 264, 266 (11th Cir. 2011).

## III. THE FALSE CLAIMS ACT

The FCA provides that:

(1) [A]ny person who –

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

. . .

is liable to the United States Government for a civil penalty of not less than $[5,500] and not more than $[11,000], as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104–41), plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a)(1)(A)-(B); *see* 28 C.F.R. § 85.3(a)(9) (adjusting penalties for inflation).

As used in the FCA, a "claim"

(A) means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that –

(i) is presented to an officer, employee, or agent of the United States . . .

31 U.S.C. § 3729(b)(2), as amended.

While Congress did not define what makes a claim "false" or "fraudulent," the "phrase 'false or fraudulent claim' in the [FCA] should be construed broadly." *United States ex rel. Sanchez v. Abuabara*, 2012 WL 254764, at *6 (S.D. Fla. 2012) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 788 (4th Cir. 1999); *see* S. Rep. No. 99-345, at 9 (1986). The FCA does not require specific intent to defraud, only knowledge of the false information or deliberate ignorance or reckless disregard of its falsity. 31 U.S.C. § 3729(b)(1).

The FCA further provides that:

Notwithstanding any other provision of law, the Federal Rules of Criminal Procedure, or the Federal Rules of Evidence, a final judgment rendered in favor of the United States in any criminal proceeding charging fraud or false statements, whether upon a verdict after trial or upon a plea of guilty or nolo contendere, shall estop the defendant from denying the essential elements of the offense in any action which involves the same transaction as in the criminal

> proceeding and which is brought under subsection (a) or (b) of section 3730.

31 U.S.C. § 3731(e).

## IV. DISCUSSION

Before I turn to the merits of the parties' Motions, I first address two procedural arguments Amor raises. He asserts: (1) this Court lacks subject matter jurisdiction because the Government is a party to a civil administrative money penalty proceeding involving Amor; and (2) the Second Amended Complaint ("SAC") does not meet the heightened pleading standards of Fed. R. Civ. P. 9(b).[4] (ECF Nos. 141, 162).

### A. Subject Matter Jurisdiction

Amor argues that the Court lacks subject matter jurisdiction under 31 U.S.C. § 3730(e)(3) and (4), and lacked jurisdiction over the dismissed Relator's original qui tam complaint, because FastTrain was subject to a 2011 DOE Program Review. The relevant subsections of § 3730(e) provide:

> (3) In no event may a person bring an action under subsection (b) which is based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party.
>
> (4)(A) The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed –
>
>> (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
>>
>> (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
>>
>> (iii) from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(3)-(4).

---

[4] In addition to these arguments, Amor contends: (1) students do not need a high school diploma or equivalent degree to be eligible for federal student aid; (2) students were not, in fact, ineligible; (3) this action violates the Double Jeopardy Clause of the Fifth Amendment; and (4) res judicata established Government loss to be $1,900,000. (ECF Nos. 141, 162).

Amor's "public disclosure bar" argument fails because he provides no evidence that the DOE's preliminary Program Review Report[5] about FastTrain (ECF No. 141-1) ever reached the public domain (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or (iii) from the news media. *See United States ex rel. Wilson v. Graham Cty. Soil & Water Conservation Dist.*, 777 F.3d 691, 697 (4th Cir. 2015) ("[T]he government is not the equivalent of the public domain.") (quoting *Kennard v. Comstock Res., Inc.*, 363 F.3d 1039, 1043 (10th Cir. 2004)). Indeed, federal law requires the DOE to "maintain and preserve" the confidentiality of any program review report until the institution has responded and the DOE issues a Final Program Review Determination ("FPRD"). 20 U.S.C. § 1099c-1(b)(6)-(8). That never happened here. Where there is "no 'public disclosure' under section 3730(e)(4)(A), [the] qui tam action is not jurisdictionally barred under that section."[6] *United States ex rel. Williams v. NEC Corp.*, 931 F.2d 1493, 1500 (7th Cir. 2016).

As for Armor's arguments under § 3703(e)(3), it is his burden to show that the Government is a party in an administrative civil money penalty proceeding based on the same allegations or transactions at issue in this case. *See United States ex rel. Johnson v. Shell Oil Co.*, 26 F. Supp. 2d 923, 928 (E.D. Tex. 1998) (burden lies with defendant). He is correct that the FCA does not define the phrase, "administrative civil money penalty

---

[5] According to the DOE's Program Review Guide, the purpose of a program review is to promote and improve compliance by improving institutional performance. The reviewer(s) will: (1) analyze the institution's data and records and identify any weaknesses in the institution's procedures for administering Title IV, HEA program funds; (2) frame required actions and recommendations that will strengthen the institution's future compliance with Title IV, HEA rules and regulations; (3) quantify any harm resulting from the institution's impaired performance and identify liabilities where noncompliance results in loss, misuse, or unnecessary expenditure of federal funds; determine the extent to which any weaknesses in the institution's administration of Title IV, HEA program funds may subject students and taxpayers to potential or actual fraud, waste, and abuse; and (4) refer institutions for administrative action to protect the interests of students and taxpayers, when necessary. Program Review Guide for Institutions (2009), https://ifap.ed.gov/programrevguide/attachments/2009ProgramReviewGuide.pdf

[6] In any event, the United States has invoked its statutory right under 31 U.S.C. § 3730(e)(4) to oppose dismissal on this basis.

proceeding," and thus leaves it open to interpretation. The fact is, however, that the preliminary Program Review Report contains no demand for payment of a money penalty. *Cf. id.* (payment demands and audit letters do not bar suit under § 3730(e)(3)). Indeed, the DOE may seek to recover money from an institution only *after* it issues an FPRD. 34 C.F.R. pt. 668. Again, that never happened here. Amor therefore has not convinced me that the preliminary Program Review Report is an administrative civil money penalty proceeding that would bar this action under § 3730(e)(3), or that it is evidence that such a proceeding was pending.

Simply put, Amor's contention that this Court lacks subject-matter jurisdiction is misguided.

### B. Rule 9(b)

The United States contends Amor waived his argument under Rule 9(b) by failing timely to raise it. But "Rule 9(b)'s pleading standard is not an affirmative defense that is waived by a defendant's failure to raise it" in an initial pleading. *See, e.g.*, *Olson v. Fairview Health Servs. of Minnesota*, 831 F.3d 1063, 1074 (8th Cir. 2016). A court may resolve a Rule 9(b) deficiency even on a motion for summary judgment. *United State ex rel. Schwartz v. Coastal Healthcare Group, Inc.*, 2000 WL 1595976, at *4 (10th Cir. 2000). That said, Amor's Rule 9(b) argument is unavailing.

A complaint under the False Claims Act must meet the Rule 9(b) pleading standard. *See United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1309-10 (11th Cir. 2002) (noting "it was 'well settled' and 'self-evident' that the False Claims Act is 'a fraud statute' for the purposes of Rule 9(b)") (citation omitted). A False Claims Act complaint satisfies Rule 9(b) if it sets forth "'facts as to time, place, and substance of the defendant's alleged fraud,' specifically 'the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.'" *Id.* at 1310 (quoting *United States ex rel. Cooper v. Blue Cross & Blue Shield of Fla.*, 19 F.3d 562, 567-68 (11th Cir. 1994)).

The SAC easily satisfies Rule 9(b)'s requirements. It specifies the substance of Amor's fraudulent acts in exacting detail, *see generally* ECF No. 83, including the approximate time periods and, in some cases, specific dates of fraudulent acts, *see, e.g., id.* ¶¶ 63, 100, and who engaged in them, *see, e.g., id.* ¶¶ 86, 100. Amor's argument under Rule 9(b) therefore fails.

7

## C. The United States' Arguments

I next address the United States' arguments in support of its Motion, as they are case dispositive. The United States contends: (1) Amor's criminal conviction precludes him from denying any of the elements of the fraudulent and/or false claims alleged in this action; (2) Amor's false claims were material to the DOE's payments to FastTrain; (3) the United States is entitled to treble damages; and (4) Amor is liable for civil penalties under 31 U.S.C. § 3729(a). I discuss the effect of Amor's criminal conviction first.

### 1. The Effect of Amor's Criminal Conviction

Under the principles of collateral estoppel, the preclusive effect of a criminal conviction on future civil proceedings is well established. *See, e.g., Emich Motors Corp. v. Gen. Motors Corp.,* 340 U.S. 558, 568-69 (1951) ("It is well established that a prior criminal conviction may work an estoppel in favor of the Government in a subsequent civil proceeding."). Under federal common law, for collateral estoppel to apply: "(1) the issue must be identical in the pending case to that decided in the earlier proceeding; (2) the issue must necessarily have been decided in the earlier proceeding; (3) the party to be estopped must have been a party or have been adequately represented by a party in the earlier proceeding; and (4) the issue must actually have been litigated in the first proceeding." *Montalbano v. C.I.R.*, 307 F. App'x. 322 (11th Cir. 2009) (citing *In re Raiford*, 695 F.2d 521, 523 (11th Cir. 1983)).

For claims arising under the FCA, the principle of collateral estoppel is codified in the FCA at 31 U.S.C. § 3731(e). The statute makes clear that a criminal conviction for a violation of 18 U.S.C. §§ 371 and/or 641 estops a defendant in a FCA case from denying the essential elements of the §§ 3729(a)(1)(A) and (B) offenses when the claims involve the

same *transaction* at issue in the defendant's prior criminal proceeding. *See, e.g.*, *United States v. Anghaie*, 633 F. App'x. 514, 516 (11th Cir. 2015).[7]

Here, the Second Superseding Indictment against Amor and his co-conspirators alleges, as the United States alleges in this action, *inter alia*, that the DOE approved FastTrain to receive both Pell Grants and Direct Loans. *See* Second Amended Complaint, E.C.F. No. 83 ¶¶ 37-68; *Amor Criminal Proceeding*, Second Superseding Indictment, ECF No. 252 ¶¶ 15- 30.  Amor signed Program Participation Agreements ("PPAs") in which he agreed that FastTrain would comply with all applicable federal statutes and regulations relating to the Pell Grant and Direct Loan Programs, including, *inter alia*, the requirement that FastTrain enroll only students with a high school diploma, GED, or other approved credential. Based on those representations, the Government charged Amor with fraud or false statements in the *Amor Criminal Proceeding*. For example, the Second Superseding Indictment alleges, *inter alia*:

---

[7] *See also United States v. Aleff*, 772 F.3d 508, 510 (8th Cir. 2014) (defendants who pled guilty to conspiracy to defraud the United States by submitting false applications for loan-deficiency payments estopped from denying essential elements of FCA offenses); *United States ex rel. Nottingham v. Thomas*, 2015 WL 7424738 (E.D. Va. 2015) (criminal conviction precludes denying liability); *United States ex rel. Green v. Schuykill Products, Inc.*, 2014 WL 2154664 (M.D. Pa. 2014) (guilty plea for 18 U.S.C. § 371 violation conclusively established all factual issues as to his liability under the FCA); *United States v. Karron*, 750 F.Supp.2d 480, 487 (S.D.N.Y. 2011) (defendant in a FCA suit precluded from denying liability for false statements when previously convicted in criminal proceeding for the "same transaction."); *United States v. Mastellone*, 2011 WL 4031199 (S.D.N.Y. 2011) (defendant who pled guilty to felony charge of fraudulently stealing money from the United States, in violation of 18 U.S.C. § 641, "estopped from denying the essential elements of the §§ 3729(a)(1)(A) and (B) offenses, since these claims involve the same transaction at issue in [defendant]'s prior criminal proceeding, at which he pled guilty."); *United States v. Sriram*, 2008 WL 516306 (N.D. Ill. 2008) (statutory estoppel proper where civil action involved the "same course of conduct" and overlapping "specific factual matters" as prior criminal case); *United States v. Eghbal*, 475 F. Supp. 2d 1008 (C.D. Cal. 2007) (no genuine issue of material fact regarding liability under FCA because defendants' prior convictions and admissions in plea agreements established that their false statements caused the Government "to pay out money").

## PURPOSE OF CONSPIRACY

3. It was the purpose of the [Defendants'] *conspiracy* to unlawfully enrich themselves by obtaining and misappropriating Pell Grant and Direct Loan funds from the United States Department of Education *by making materially false and fraudulent representations*, and *by the concealment of material facts*, concerning, among other things, the eligibility of students to receive Pell Grant and Direct Loan funds and the students' status as high school graduates.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things, the following:

4. Beginning in or around January 2010, ALEJANDRO AMOR directed JOSE W. GONZALEZ, ANTHONY MINCEY, Michael Grubbs, Luis Arroyo, Juan Arreola, Juan Peña, and others, to enroll students without high school diplomas or GEDS in FastTrain. AMOR further *directed [them], and others, to coach those students to lie* to FastTrain financial aid representatives assisting students with their FAFSAS, in order *to falsely and fraudulently obtain* Pell Grant and Direct Loan funds for the students.

5. JOSE W. GONZALEZ, ANTHONY MINCEY, Michael Grubbs, Luis Arroyo, Juan Arreola, Juan Peña, and others, acting at the direction of ALEJANDRO AMOR, recruited students without high school diplomas to enroll in FastTrain by, among other things, *falsely and fraudulently advising* the students that they could obtain a high school diploma for a fee and *should falsely and fraudulently respond yes* when asked by FastTrain financial aid representatives whether they had a high school diploma or GED.

6. ALEJANDRO AMOR, JOSE W. GONZALEZ, ANTHONY MINCEY, Michael Grubbs, Luis Arroyo, Juan Arreola, Juan Peña, and others, caused the students without high school diplomas to submit FAFSAS to the United States Department of Education *falsely and fraudulently indicating* that the student had graduated from high school or had a GED.

7. As a result of these *false and fraudulent FAFSAS*, ALEJANDRO AMOR received Pell Grants and Direct Loans from the United States Department of Education.

8. ALEJANDRO AMOR used the proceeds from the *false and fraudulent FAFSAS* for his own benefit and the benefit of others, and to further the fraud.

*See Amor Criminal Proceeding*, Second Superseding Indictment, ECF No. 252, Purpose of Conspiracy ¶ 3; Manner and Means of the Conspiracy ¶¶ 4, 5, 6, 7, 8 (emphasis added); *see also* Second Superseding Indictment, ECF No. 252, Overt Acts ¶¶ 1-40.

The SAC in this case contains nearly identical allegations. To highlight just a few examples:

> 7. Beginning in at least July 1, 2009 and continuing through its closure in 2012, FastTrain engaged in a widespread ***scheme to defraud*** the Department of Education in order to receive federal funding it would not otherwise have been entitled to receive.
>
> 8. FastTrain ***made false statements and concealed material information*** from the Department of Education in order to ensure that it would continue to receive federal funding under Title IV of the HEA. For example, FastTrain and its employees knowingly ***submitted and/or caused to be submitted false information*** relating to the eligibility of students to receive title IV, HEA program assistance, by providing false documentation that students had high school diplomas or its recognized equivalent, when such students did not have such credentials.
>
> 9. FastTrain ***engaged in fraudulent conduct*** in an attempt to secure federal aid for students who, but for FastTrain's conduct, would have been ineligible for assistance under Title IV of the HEA. FastTrain fabricated high school diplomas of some of its prospective students at some of its campuses in order to permit unqualified students to enroll at FastTrain. FastTrain then improperly received and retained Title IV assistance for those unqualified students. FastTrain also told prospective students who did not have high school diplomas or their equivalency that they could enroll and receive federal financial assistance if they attended FastTrain. FastTrain instructed and counseled certain ineligible prospective students ***to provide false high school completion attestations*** and further ***coached certain prospective ineligible students to lie*** on Free Application for Federal Student Aid ("FAFSA") documentation. FastTrain also improperly received and retained Title IV assistance for those unqualified students.
>
> 10. FastTrain also ***routinely altered attendance records*** of students who were not meeting minimum requirements. FastTrain kept students on its attendance rolls - and, as such, federal financial aid recipient list – when students were not attending FastTrain. Finally, FastTrain employees ***falsified financial aid records*** in order to secure more federal funding for students than the students were eligible to receive.
>
> 11. Defendants' conduct was knowing and material to FastTrain's continued eligibility to participate in the Title IV programs. As a result of Defendants' ***fraudulent scheme and false representations*** of

11

> Title IV eligibility, FastTrain received millions of dollars of Title IV financial aid that it otherwise would not have received but for Defendants' conduct.

(ECF 83 ¶¶ 7-11) (emphasis added).

Amor argues that estoppel does not apply because the elements of his criminal charges are different than the elements of the civil claims in this case. That argument ignores the FCA's plain language, which specifies that preclusion applies where "the essential elements of the offense [in the civil case] . . . involve[] the same *transaction* as in the criminal proceeding." 31 U.S.C. § 3731(e) (emphasis added). The court's Order Denying Defendant Amor's Motion for New Trial (ECF No. 410) in the *Amor Criminal Proceeding* leaves no doubt that the transactions at issue there were the same as those at issue here. It states, in relevant part:

> This case arose from an investigation by the United States Department of Education, Office of [Inspector] General, regarding illegal student recruiting and enrollment practices at Fast Train, a for-profit college with seven campuses throughout Florida. Testimony at trial revealed that Fast Train admissions representatives—acting at the direction of the school's owner, Defendant Alejandro Amor ("Defendant")—routinely recruited and enrolled students at Fast Train who were not eligible for federal student aid because they did not have a high school diploma or GED. In order to obtain federal student aid on behalf of the ineligible students they recruited, Fast Train admissions representatives . . . coached the students to falsely claim that they did have the required credential—first on their Fast Train enrollment paperwork, then in interviews with Fast Train's financial aid officers, and finally on their applications for federal student aid ("FAFSAs"). As part of their efforts to induce ineligible students to enroll in Fast Train, admissions representatives falsely promised students they would earn a high school diploma while attending Fast Train and, in some cases, representatives actually sold students fictitious high school diplomas.
>
> . . .
>
> The Government presented approximately forty witnesses, including several former Fast Train students who testified that they were recruited, coached to lie on their FAFSAs about their eligibility for student aid, and saddled with thousands of dollars in debt that they are unable to repay. Most of the student witnesses testified that they dropped out of Fast Train for personal reasons or because they were not satisfied with the school. Six Jacksonville students identified Mincey as the (or one of the) admissions representatives who falsely

12

> advised them that a high school diploma or GED was not required for admission to Fast Train.
>
> The Government also presented the testimony of several former Fast Train employees who were either directed by Defendant to enroll ineligible students or fired for refusing to do so. For example, former admissions director Luis Arroyo testified that he and his staff began creating fake high school diplomas for ineligible students and that he got the idea from Defendant, who had ordered education director Santiago Martinez to create a diploma for a student. Additionally, former financial aid representative Caridad Perez testified that Defendant routinely pressured her to process ineligible students for federal student aid, and ultimately fired her for refusing to do so. Moreover, former admissions representative Jose W. Gonzalez testified that, with Defendant's blessing, he obtained invalid high school diplomas for recruits from a high school called American Worldwide Academy, by taking the test for students and collecting a fee; in some cases, Mr. Gonzalez enrolled the students without actually collecting the fee or providing the diploma at all. Finally, the Government presented several emails and other documents, as well as an audio recording, which, together with the testimony, established that Defendant was repeatedly advised about the illegal activities at Fast Train, and took active steps to conceal those activities, including creating false reports of internal investigations, fake "secret shopper" programs, and fake employee disciplinary reports.
>
> . . .
>
> Defendant presented several witnesses in his defense. . . . Fifth, former Fast Train operations manager German Vargas testified that Defendant never asked him to do anything illegal and, in fact, that Defendant had directed him to conduct an investigation into allegations of misconduct raised by former Fast Train employee (and Government witness) Joseph Bodden. . . .
>
> The Government called eight rebuttal witnesses to establish that Amor had falsified the results of the Bodden investigation, about which German Vargas had testified. Specifically, the rebuttal witnesses demonstrated that, even when presented with notes of the investigation, which included names of Fast Train enrollees without high school diplomas, Defendant had not only retained federal student aid in those enrollees' names, but had also prepared a lengthy type-written report falsely claiming that the Bodden investigation had revealed no improprieties in any area, including students without diplomas.

(*Id.*).

13

Applying the criteria for estoppel under the FCA, Amor's prior conviction has preclusive effect in the instant case.[8] The criminal and civil cases both involve the same transactions – Amor's fraudulent claims to the DOE.[9] The falsity of Amor's statements and claims were central to his criminal charges, and are central to his liability in this case. Thus, as a matter of law, the final judgment rendered in favor of the United States and against Amor in the *Amor Criminal Proceeding* estops Amor from denying the essential elements of the offense in this action. *See* 31 U.S.C. § 3731(e). The effect of this estoppel is that Amor cannot deny liability under 31 U.S.C. § 3729(a)(1)(A) and (B).[10]

As Amor is estopped from contesting the FCA cause of action against him, there are no genuine issues of material fact upon which Amor might craft a defense. Summary Judgment in favor of the United States and against Amor is therefore warranted. Accordingly, the only issue left for me to resolve is the amount of damages and/or civil penalties to which the United States is entitled.

### 2. Damages

When found to have violated the FCA, a defendant "is liable to the United States Government for . . . [three] times the amount of damages which the Government sustains because of the act of that person," plus civil penalties. 31 U.S.C. § 3729(a). Amor does not appear to dispute that fact. Instead, he challenges the United States' proposed measure of single damages. He argues that in the *Amor Criminal Proceeding*, the court made a "judicial determination" of the United States' losses when it ordered him to pay restitution totaling $1,900,000. Thus, he contends, that "amount is indeed res judicata" as to damages in this case. (ECF No. 162 at 9). That contention lacks merit.

The Eleventh Circuit has recognized that "[a]n order of restitution is not a judicial determination of damages. Damages measure the amount of compensable loss a victim

---

[8] The fact that Amor is currently appealing his conviction is irrelevant to the preclusion analysis. *See, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Sun*, 1997 WL 165331, at *2 (2d Cir. 1997) ("[A] pending appeal does not relieve a conviction of its preclusive effect.").

[9] Indeed, the parties previously stipulated that this action and the *Amor Criminal Proceeding* arise from the "same general facts." *See, e.g.*, Joint Motion to Stay Civil Proceedings Pending Final Resolution of Related Criminal Case (E.C.F. No. 84 at 6).

[10] Because I conclude Amor is estopped from denying liability in this case, I need not address the parties' arguments as to whether Amor actually violated the FCA.

has suffered. Restitution, by contrast, is an equitable remedy, 'subject to the general equitable principle that [it] is granted to the extent and only to the extent that justice between the parties requires.'" *United States v. Barnette*, 10 F. 3d 1553, 1556-57 (11th Cir. 1994) (citation omitted). In *Barnette*, the Eleventh Circuit declined to limit a damages award in a civil FCA case to the amount of restitution awarded by the district court, noting that the defendant's attempt to equate the sentencing judge's restitution order with a determination of damages was "unpersuasive". *Barnette*, 10 F.3d at 1556-57. The court held that "[m]ore likely, the sentencing judge decided that the Government had lost at least $7 million and that Barnette could pay that amount, but left final resolution of the Government's damages claim to the ensuing civil case." *Id.* Although the sentencing court in this case awarded restitution of $1,900,000, *Barnette*'s reasoning nevertheless directs that a restitution finding in a criminal case does not foreclose the United States from seeking a different damages award in a subsequent civil case. *See id.*

"FCA damages 'typically are liberally calculated to ensure that they afford the government complete indemnity for the injuries done it.'" *United States ex rel. Doe v. DeGregorio*, 510 F. Supp. 2d 877, 890 (M.D. Fla. 2007) (quoting *United States ex rel. Roby v. Boeing Co.*, 302 F.3d 637, 646 (6th Cir. 2002)). While there is "no set formula for determining the government's actual damages" for an FCA claim, the Eleventh Circuit has explained that, as a general rule, the "measure is 'the difference between what the government actually paid on the fraudulent claim and what it would have paid had'" it known of the false statements. *Anghaie,* 633 F. App'x at 518 (quoting, *United States v. Killough*, 848 F.2d 1523, 1532 (11th Cir. 1988)). Where, as here, the United States would have paid out nothing to FastTrain but for its false claims and certifications, the proper measure of damages is the full amount the United States paid out. *See id.* (citing *United*

15

*States ex rel. Longhi v. United States*, 575 F.3d 458, 461–62, 473 (5th Cir. 2009) (affirming award of damages based on full amount of Government grant without offset)).[11]

According to the United States, the DOE paid out approximately $25,200,000 to FastTrain during the 2010-2012 program years. That amount, if supported by the evidence, would therefore be an accurate measure of single damages under the law. Within its discretion, however, the United States requests that I limit the measure of damages to the more modest amount of federal student aid FastTrain actually stole through its false claims and false certifications. Testimony in the *Amor Criminal Proceeding* pegged that amount at $4,129,765. *See, e.g.*, *Amor Criminal Proceeding*, ECF No. 543 at 33-34. I find that amount to be a reasonable, if not a conservative, estimate of the United States' loss. *See United States ex rel. Doe*, 510 F. Supp. at 890 ("The computation of damages does not have to be done with mathematical precision but, rather, may be based upon a reasonable estimate of the loss."). Amor is therefore liable for $4,129,765, trebled, minus any restitution he pays to the Government.[12]

### 3. Civil Penalties

Liability under the FCA also triggers the imposition of civil penalties. 31 U.S.C. § 3729(a) (a person liable under the FCA "is liable to the United States Government for a civil penalty of not less than $[5,500] and not more than $[11,000]"); 28 C.F.R. § 85.3(a)(9) (adjusting penalties for inflation). The civil penalty the Government is entitled to recover is assessed for each false claim. 31 U.S.C. § 3729(a)(2). Thus, the number of violations of the FCA depends on the number of false or fraudulent claims or other requests for payments that defendant caused to be submitted.

---

[11] *See also United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1279 (D.C. Cir. 2010) ("[W]here the defendant fraudulently sought payments for participating in programs designed to benefit third-parties rather than the government itself, the government can easily establish that it received nothing of value from the defendant and that all payments made are therefore recoverable as damages."); *United States v. Rogan*, 517 F.3d 449, 453 (7th Cir. 2008) (affirming award of damages based on total amount that defendant received from Government without offset); *United States v. Mackby*, 339 F.3d 1013, 1018-19 (9th Cir. 2003) (rejecting damages offset where the Government had received no asset of ascertainable value).

[12] Imposition of FCA treble damages and civil penalties does not, as Amor argues, violate the Double Jeopardy Clause of the Fifth Amendment. *See Karron*, 750 F. Supp. 2d at 493 n.12 (collecting cases).

Amor signed, certified and submitted four PPAs to the DOE on behalf of FastTrain during the 2010-2012 timeframe. (ECF No. 134-2 ¶ 2; ECF No. 302-1 at 17-20). Those PPAs constituted false claims. Additionally, during the 2010-2012 program years, there were 920 separate draw-downs associated with FastTrain in the DOE's Grants Management System (G-5). (ECF No. 134-1 ¶ 3). Each draw-down falsely certified FastTrain's compliance with DOE regulations. The United States argues that, given the "egregious" nature of Amor's conduct, I should impose the maximum penalty: a $11,000 fine for each of the 924 false claims. (ECF 131 at 19-20). I agree.

The student victims in this case were especially vulnerable. They were young people who, for whatever reasons, had not graduated high school. Realizing there are few jobs one can obtain without a high-school diploma or equivalent degree, they turned to FastTrain, hoping to learn marketable skills to improve their chances of making a decent living. FastTrain aggressively recruited these students, and then used fraud to make the Government think they were eligible for federal aid and loans. FastTrain bilked the Government out of millions of dollars, most of which ended up in Amor's pockets. As for the student victims, many now carry debt that will be enormously difficult to pay off with what they can earn working the low-level jobs for which they are qualified. The effects of Amor's fraudulent acts are thus abhorrent and far-reaching.

In light of the seriousness of Amor's misconduct, I find that the statutory maximum fine of $11,000 for each of the 924 false claims is appropriate. *See Cole v. U.S. Dep't of Agric., A.S.C.S.*, 133 F.3d 803, 807 (11th Cir. 1998) (remedial penalties are not subject to excessive fine scrutiny); *United States v. NEC Corp.*, 11 F.3d 136, 137 (11th Cir. 1993) (qui tam provisions are remedial penalties).

## CONCLUSION

It is, therefore, **ORDERED** and **ADJUDGED** that Plaintiff the United States' Motion for Summary Judgment (ECF No. 131) is **GRANTED** and Defendant Amor's Cross-Motion for Summary Judgment (ECF No. 141) is **DENIED**.

**DONE** and **ORDERED** in chambers at Miami, Florida, this 15th day of February 2017.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of Record*